Dear Mr. Pitre:
On behalf of the St. Landry Parish Solid Waste Disposal District ("the District"), you have requested an opinion from this Office regarding whether the methane gas created by and emitted from a solid waste dump is considered to be a "mineral" under the Louisiana Mineral Code such that it would be subject to a mineral reservation by the vendors of the property.
Methane is not a specifically identified mineral under the Louisiana Mineral Code. However, La.R.S. 47:647, the part of the State Tax Code relating to severance taxes on minerals, definitely identifies methane as a taxable mineral production byproduct.
The Mineral Code is fairly liberal in its definition of what constitutes a mineral in Louisiana. However, all that the Mineral Code refers to with respect to minerals are those that are naturally occurring.[1] There is no provision in the Mineral Code for the ownership of minerals created as a byproduct of a non-natural process. Of course, the decay process in a landfill certainly qualifies as a natural process. However, the environment in which this natural process occurs is wholly anthropogenic.
Based upon the foregoing, although methane is not specifically identified in the Mineral Code, it is the opinion of this Office that that gas would be considered a mineral when found in its natural state by virtue of La.R.S. 31:4.[2] However, it is *Page 2 
further the opinion of this Office that methane which is a byproduct of landfill operations does not fall within the classification of a mineral in the Mineral Code to which a reserved mineral interest can attach.
In addition to our above opinion, we are further of the opinion that, because the Louisiana Department of Environmental Quality ("DEQ") has specific regulations that deal with the disposition of methane gas emitted from solid waste landfills, that such gas cannot be disposed of in any way other than pursuant to those rules. 33 La. Admin. Code VII:711, et seq. Accordingly, should the DEQ permit issued pursuant to these rules and held by the District for the site in question specify flaring of methane, then it is our opinion that the methane should be flared. If, however, there is no specified manner for the disposal of the methane (one option for which in the regulations is capture), it is the opinion of this Office that any funds realized from the resale of said methane do not fall under the classification of minerals subject to reservations under the Mineral Code and that the proceeds from such sales should be retained by the District.[3]
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By:__________________________
 RYAN M. SEIDEMANN
 Assistant Attorney General
 JDC/RMS/tp
[1] La.R.S. 31:4. Also, it should be noted that La.R.S. 31:5 is inapplicable, as it refers only to solid minerals.
[2] This conclusion is further supported by the classification of the term "gas" in La.R.S. 30:3 as "all natural gas, including casinghead gas, and all other hydrocarbons not defined as oil in Paragraph (4) above." Paragraph (4) is the definition for oil. Methane is clearly a hydrocarbon gas, as it is defined as
 a light, gaseous, flammable paraffinic hydrocarbon, CH4, that has a boiling point of -25°F (and is the chief component of natural gas and an important basic hydrocarbon for petrochemical manufacture).
Petex, A DICTIONARY FOR THE OIL AND GAS INDUSTRY, 1st ed. at 167 (Univ. of Texas at Austin 2005).
[3] This notion is supported by La.R.S. 31:7, which states that possession of minerals occurs "when they are under physical control that permits delivery to another." If the District has the right to create the landfill (which would be granted by DEQ permit) that creates the methane gas, then the District has the right to reduce that gas to possession and ultimately delivery (or flaring).